IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

**JAMES (TIM) ZUKAS**
individually and on behalf of all others
similarly situated
2321 Redwood Place
Clarksville, IN 47129

**JEFFREY JOHNSON**                              Case No.: 23-cv-874
individually and on behalf of all others
similarly situated,                              **JURY TRIAL DEMANDED**
11688 Old Colony Court
DeMotte, IN 46310

       Plaintiffs,

v.

**GENERAC POWER SYSTEMS, INC.**
S45W29290 State Road 59
Waukesha, WI 53189

and

**GENERAC HOLDINGS, INC.**
S45W29290 State Road 59
Waukesha, WI 53189

       Defendants.

---

## CLASS ACTION COMPLAINT

---

     Plaintiffs, James (Tim) Zukas and Jeffrey Johnson ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendants, Generac Power Systems, Inc. and Generac Holdings, Inc. ("Defendants" or "Generac"). Plaintiffs allege the following based upon

personal information as to the allegations regarding themselves, on the investigation of their counsel, and on information and belief as to all other allegations.

## NATURE OF THE ACTION

1.     Plaintiffs, James (Tim) Zukas and Jeffrey Johnson, bring this case on behalf of themselves and other all consumers nationwide who bought or leased Defendants' PWRcell Solar + Battery Storage System ("PWRcell"), which contained a defective component called SnapRS. Generac represents that the PWRcell provides "backup power during utility power outages" and uses "stored energy from solar panels to power your home, which helps reduce your electric utility costs."

2.     The National Electric Code ("NEC"), which sets forth standards for electrical wiring and equipment, requires solar systems to have a fast and efficient way to shut down the electricity running through the solar system as a safety precaution. This requirement is so that emergency responders can avoid electrical hazards should they have to work around solar system equipment.

3.     The PWRcell's shut down feature is the SnapRS, which is a switch that is installed on each solar panel. The SnapRS, however, is defective and unsafe because during normal use, it overheats, burns, melts, chars, and breaks apart due to continuously turning on and off instead of being in a stable on or off position. In the worst-case scenario, the SnapRS can cause a home fire. At least three home fires have already been attributed to the defective SnapRS. Moreover, Generac has acknowledged that the SnapRS has a failure rate of 50% but has failed to issue a recall.

2

4. Apart from the unreasonable safety-hazards the SnapRS creates, the defective component also results in a malfunction of the solar system panels and a decrease in energy production. Specifically, when the SnapRS malfunctions, the PWRcell's inverters detect the issue and display an error code—"PVRSS Lockout"—which means the system is in lockout mode. The solar system is then unable to produce solar energy until the lockout error is cleared. Many consumers who bought the PWRcell have lost energy production, the ability to store power in case of a power outage, and the promised decrease in electricity costs, contrary to Generac's representations promising those attributes.

5. Plaintiffs and Class members would not have purchased or leased the PWRcell, or would have paid less for it, had they known about the defective and unsafe SnapRS device.

6. Accordingly, Plaintiffs bring this proposed class action and assert claims on behalf of themselves and all other similarly situated persons (defined below in Paragraphs 52-54) for violations of the Magnusson-Moss Warranty Act; Indiana's Deceptive Consumer Sales Act; for breach of express and implied warranties under the Uniform Commercial Code; breach of express and implied warranties under Indiana law; fraudulent concealment; and unjust enrichment.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the

proposed Class exceeds one hundred; and many members of the proposed Class are citizens of different states than the Defendants.

8.      This Court has personal jurisdiction over Defendants because Defendants are headquartered in the State of Wisconsin, regularly conduct business in this Judicial District, and have extensive contacts with this forum.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendants transact substantial business in this District.

10.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## THE PARTIES

11.     Plaintiff, James (Tim) Zukas, resides in Clark County and is a citizen of Indiana. He bought a solar energy system and PWRcell about three years ago. He has three banks of solar panels. Power Home Solar, LLC, d/b/a Pink Energy, installed the equipment for Mr. Zukas. In the summer of 2022, the first bank of solar panels was not producing energy. During a service call, Pink Energy replaced the SnapRS devices, however, the energy production was significantly reduced. After Pink Energy declared bankruptcy, Generac sent Nova Source to help Mr. Zukas. During the service call, Nova Source did something with the SnapRS devices and Mr. Zukas' solar energy system produced energy again, but only for two days, and in or around December 2022, all three banks of his solar panels failed, and are no longer producing energy. Mr. Zukas learned about the defective SnapRS devices during his service call with Pink Energy in 2022. Recently, through media sources, he learned about the defective

4

and unsafe nature of the SnapRS devices. If Mr. Zukas had known that the SnapRS devices were defective and unsafe prior to installation of his solar energy system, Mr. Zukas would not have bought the PWRcell or would have paid less.

12.    Plaintiff, Jeffrey Johnson, resides in Jasper County and is a citizen of Indiana. He bought a solar energy system and PWRcell which were installed by Pink Energy in March 2022. During the first couple of months of ownership, Mr. Johnson saw no decrease in his electricity bills and the solar energy system was not working. He contacted Pink Energy which replaced the SnapRS devices. Despite the replacements, Mr. Johnson still did not experience a decrease in his electricity bills. After Pink Energy declared bankruptcy, Generac sent Nova Source to help Mr. Johnson. During the service call, Nova Source replaced the SnapRS devices. The solar energy system only worked for about three days and then the solar energy system went dead. Nova Source returned and after that service call, Mr. Johnson's furnace and TV stopped working. Mr. Johnson learned about the defective SnapRS devices during his service call with Pink Energy in 2022. Recently, through media sources, he learned about the defective and unsafe nature of the SnapRS devices. If Plaintiff had known that the SnapRS was defective and unsafe prior to installation of his solar energy system, Plaintiff would not have bought the PWRcell or would have paid less for it.

13.    Defendant, Generac Power Systems, Inc., designs, manufactures, warrants, markets, and distributes the PWRcell Solar + Battery Storage System, including the SnapRS devices, for sale in the United States. The company maintains

5

its principal place of business in Waukesha, Wisconsin.

14.     Defendant, Generac Holdings, Inc., is a publicly traded company incorporated in Delaware and maintains its headquarters in Waukesha, Wisconsin at the same location as its subsidiary, Generac Power Systems, Inc.

15.     Defendants, Generac Power Systems, Inc. and Generac Holdings, Inc., are collectively referred to herein as "Defendants" or "Generac."

<u>FACTUAL ALLEGATIONS</u>

**Generac Advertised the PWRcell as a System that Would Protect Consumers During Power Outages While at the Same Time Decreasing Their Electricity Costs.**

16.     Solar technologies convert sunlight into electrical energy via panels that are comprised of photovoltaic ("PV") cells made of silicon that are linked together. Sunlight can also be converted into electrical energy via mirrors that concentrate solar radiation. The energy created from solar technologies can then be used to generate electricity to directly power appliances or for storage in batteries that can be used for power later. In recent years, solar power systems with PV cells have gained popularity with consumers as a way to reduce electricity bills and to access stored energy in the event of a power outage.

17.     In 2019, Generac began its foray into the residential solar energy sector with significant investments. It acquired Pika Energy, Inc. ("Pika"), a "designer and manufacturer of battery storage technologies that capture and store solar or other power sources for homeowners and business." Around this time, Generac also acquired Neurio Technology Inc., a "leading energy data company focused on metering technology and sophisticated analytics to optimize energy use within a

6

home or business." Then Generac acquired Enbala Power Networks Inc., "one of the leading providers of distributed energy optimization and control software that helps support the operational stability of the world's power grids." In 2021, Generac acquired Chilicon Power LLC, "a designer and provider of grid-interactive microinverter and monitoring solutions for the solar market."

18.    Thereafter, Generac began manufacturing and marketing the PWRcell Solar + Battery Storage System ("PWRcell"). The PWRcell is designed and sold to work with solar panels from most manufacturers.

19.    In its advertising materials, Generac touted the PWRcell as a "revolutionary battery storage system," and emphasized the following two key things about the PWRcell: (a) that customers would have backup power during outages; and (b) that customers would save money on electricity bills. Generac told customers, "Never be surprised by utility power outages or high electricity bills again when you have the Generac PWRcell, a fully integrated solar + battery storage system."

20.    Generac's marketing brochures reinforced these messages and highlighted that the PWRcell:

- "Provides backup power during utility power outages";

- "Use[s] stored energy from solar panels to power your home, which helps you to reduce your electricity costs";

- Is "100% emission and fossil fuel free"; and

- Has a "Flexible design allow[ing] for indoor and outdoor installation."

7

21.    Generac provided the following diagram to show customers how PWRcell works:



22.    Generac also provided the following graphic in its brochures purporting to show that power outages have increased over the last several years:



23.    On its website, Generac represented to customers that, "PWRcell's revolutionary battery storage technology captures and stores electricity from solar panels or the grid. The energy stored can be discharged during peak demand times when the cost of utility power is higher, which helps you save money. Watch how easy

8

it is to use PWRcell."

24.     Generac advertised that the PWRcell's storage capabilities was flexible, allowing customers to begin with storing 9kWh of energy that could expand in increments of 3kWh up to 36kWh with two battery cabinets. Generac also represented to customers that the PWRcell requires "minimal maintenance," and "safely delivers power directly to your home."

25.     Generac advertises that the PWRcell is "backed by a 10-year warranty" and warrants that the PWRcell is free from defects. The warranty states that it covers parts, labor, and limited travel and specifically provides warranty coverage from ten years to twenty-five years, depending on the part.

26.     For example, the Generac PWRcell Battery Cabinet is warranted for ten years, while the SnapRS is warranted for twenty-five years.

**The PWRcell's SnapRS is Defective and Dangerous, and Contrary to Generac's Representations, Fails to Decrease Electricity Bills or Provide Protection in the Event of a Power Outage.**

27.     Generac represented that the PWRcell includes the "SnapRS / Rapid Shutdown Device," which it described as "an in-line disconnect device that helps to satisfy module-level rapid shutdown requirements." Specifically, Generac represented that the SnapRS meets "NEC 2017 and NEC 2020 PV rapid shutdown requirements" that protect equipment by automatically detecting "arc and ground faults."

9

28.     SnapRS devices link each PV module (or solar panel) within a solar panel array. An array typically has eight panels but the average home needs about seventeen to twenty-one to completely cover electricity needs. Electricity is directed through the SnapRS device to what is called the PV Link and then into the battery storage. According to Generac, the SnapRS disconnect device is connected to the negative lead (-) of each module in the solar array for simple module-level rapid shutdown compliance. SnapRS devices isolate array voltage when a rapid shutdown is initiated at a PWRcell™ Inverter. When rapid shutdown is initiated, SnapRS units isolate each PV module in the array, reducing array voltage to <80V in seconds.

29.     SnapRS devices should be either in an off or on position, however, as Jeffrey McAndrew, Generac's Director of Sales for the East Region admitted to one of its partners, the SnapRS devices are defective. Specifically, the SnapRS devices turn on and off continuously. As a result, the PWRcell's inverter detects malfunctioning and/or overheating and then the system goes into "lockout" mode. When the PWRcell goes into "lockout" mode, it will display a "PVRSS Lockout" error code and shuts down the solar energy system thereby reducing the production of electricity. The SnapRS device's instability can cause it to overheat, burn, bubble out, melt, char and explode. In the worst-case scenario, the SnapRS can result in a home fire. According to one of Generac's former partners, Pink Energy, the SnapRS device is likely the cause of at least three home fires that have occurred in Lexington, South Carolina, Lancaster, Kentucky, and Suffolk, Virginia.

30.     Below is a photo of a SnapRS device that melted and exploded, according to Pink Energy's lawsuit against Generac:



31.     In 2021, Generac began receiving complaints from residential customers and its partner installers, like Pink Energy, about the defective SnapRS. For example, Pink Energy reported that in April 2021, it discovered a melted SnapRS device during a service call for a customer complaining about decreased system production. Pink Energy says it reported the issue immediately to Generac and provided it with photos of the melted SnapRS.

11

32.     In summer 2021, other solar installers also reported experiencing high rates of failure with the SnapRS devices. Solar installers also reported coming across signs of heat deformation in the SnapRS devices during service calls.

33.     In Pink Energy's lawsuit against Generac, it reported that Generac stated it was developing and testing an updated SnapRS model called the 801A. Later, after the home fire in Kentucky, Generac had reportedly developed a firmware update with the ability to remotely identify SnapRS devices that were in danger of overheating and could result in a fire hazard. The firmware update, however, was inadequate because many of the solar energy and PWRcell systems installed in residential homes were not connected to the Internet.

34.     In late 2021, numerous customers complained that they were not receiving the energy production that had been promised or seeing decreased electricity bills, and in some cases, they complained about complete shutdowns of their solar energy systems as indicated by the lockdown mode error codes.

35.     Also in late 2021, Generac started supplying partners with the redesigned SnapRS 801A. According to Pink Energy, Generac instructed its partner installers to only replace those devices that had charred or melted. Undamaged units were to remain in place. The SnapRS 801A, however, was defective like the SnapRS 801 before it.

36.     In June 2022, Generac publicly admitted the defective nature of the SnapRS devices in a letter addressed to customers from Keith Marett of Generac. The letter was addressed to "valued Power Home Solar and Generac Customer[s]" and

stated in part that Generac understood that customers "may have experienced certain issues with a particular Generac component of your solar energy system, the SnapRS 801 or 801A," and that it had developed a new model, the SnapRS 802. The letter also stated SnapRS 802 was designed to replace the 801 and 801A versions to increase performance and reliability, and that it was tested "in extreme heat and corrosive moisture conditions with exceptional results."

37. In another letter to its certified installers, Generac's Keith Marett stated the company was introducing the new SnapRS 802 that "was designed and engineered to help optimize and enhance the performance of PWRcell solar + storage systems." According to this letter, The new SnapRS802:

- Has been designed to replace the RS801, drastically increasing performance and reliability;

- Has been tested in extreme heat, and corrosive moisture conditions with exceptional results;

- Exceeds the UL 1741 requirements for reliability and safety; and

- Is compatible with solar panels up to 12 Amp ISC STC (15 Amps at maximum current).

38. Mr. Marett's letter concluded by stating that Generac was "committed to making the transition to SnapRS802s as seamless as possible. Please continue to work with your local Generac Clean Energy Sales Representative to submit technical support tickets regarding sites impacted by the PVRSS Lockout code."

13

39.     Throughout 2022, however, reports of burned and melted SnapRS devices in residential solar energy systems continued. According to Pink Energy, in August 2022, Generac acknowledged a near 50% failure rate. According to Pink Energy's lawsuit against Generac, it installed approximately 19,000 solar energy systems with the PWRcell and the SnapRS, and half of them experienced the "PVRSS Lockout" problem. Pink Energy claimed that it expects all of its customers will eventually need service to replace the defective SnapRS devices.

40.     A number of consumers have gone online to complain about the problems with their solar energy systems and the SnapRS devices. Below is a sample of the online complaints:

- **I've experienced multiple catastrophic failures of SnapRS devices, which have caused significant concern for my family's safety. The solar company is no longer responsive to my calls, and Generac has refused to provide assistance or address the issue. I wish I could return this system and receive compensation for the cost of replacing my roof due to the damage caused by the SnapRS fire. The safety of my family and others who may be at risk due to Generac's negligence is of paramount importance, and I hope that proper action will be taken to rectify this situation.**

14

- I have a full Generac solar system installed by Pink Energy. The system is currently not working and I owe over 70K for it. The company replaced the snaps on the panels once but they have apparently failed again. It is very disappointing since having solar was part of a plan to reduce my expenses when I retire. I regret that decision now.

- We spent over $50k to have a system installed. We have had working solar about 50% of the time. The system keeps turning off, stops responding, inverter fails, etc. Over a 6 month period when my solar did not work, I have had to take off 7 days for the them to troubleshoot a problem. To this day, I have to call in to have my solar turned back on when I see my power bill has shot up. If I could rewind the clock and not install this system I would definitely do so and will NEVER EVER buy or recommend this product to anyone. I asked the company for them to compensate me for the loss of power and time and they said, "Sorry. There is nothing we can do."

- As I write this review, all the PV panels on my roof are off-line. Why, because of PVRSS lock-out errors: aka, the SNAP problem. Since, March of 2022, the system has been off-line more often than not. Generac keeps resetting the system remotely, and promising a real fix. First, they blamed faulty installation, then finally admitted the RS801 SNAP units were defective. After, my system was upgraded with the "new and improved" RS802 SNAP units, then they blamed faulty software. So far,

15

nothing they have done has fixed my system. Generac's custom service has been a major disappointment. They alternate between blaming anyone and everyone else, or acknowledging there "might" [be] a defect in the system with a "possible" fix in the development. On any given day, the answer you get depends on who answers call or email. They still have not issued any kind of formal statement. Bottom line, we have a >$35K solar system with battery back-up, that cannot reliably produce electrical power or perform its primary mission of providing emergency back-up power - without the PV panels on-line, it can't even attempt to keep the batteries charged after the lost of utility power.

41. Customers have also given interviews to news stations. For example, David Gouldner of North Carolina spoke to ABC News Channel 12 about his non-working solar system. He paid $50,000 to install the solar equipment, and thought he was doing something good for the environment and would see decreased energy bills. "The only thing I'm doing is paying for nothing," he said.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

42. Within the period of any applicable statutes of limitation, Plaintiffs and members of the Class could not have discovered through the exercise of reasonable diligence that Generac's PWRcell systems were equipped with defective SnapRS devices that rendered the PWRcell unsafe, unreliable, and non-functional as alleged herein.

16

43.     Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that the PWRcell contained a defective rapid shutdown device that overheats, bubbles, combusts, and/or catches fire during normal use, and could cause damage to Plaintiffs' and Class members' solar energy systems and property; and resulting in the malfunction of the solar energy system, causing a decrease or complete shutdown of their solar energy production, and loss in savings in electricity bills; or that Generac's marketing of the PWRcell, among other representations, as "safely delivers power directly to your home[,]" providing "backup power during utility power outages[,]" and using "stored energy from solar panels to power your home, which helps reduce your electric utility costs" were false and/or misleading. The information revealing the PWRcell to be unsafe, unreliable, and non-functional was within Generac's sole possession, and was not known to the public until recently due to media coverage.

44.     Plaintiffs and Class members could not have reasonably discovered the true extent of Generac's deception with regard to the safety, reliability, and functionality of the PWRcell on their own.

45.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

## Fraudulent Concealment Tolling

46. All applicable statutes of limitation have also been tolled by Generac's fraudulent concealment throughout the period relevant to this action.

47. Instead of disclosing to Plaintiffs, Class members, and consumers about the defective nature and safety risks posed by its PWRcell, Generac continued to manufacture and sell the PWRcell without disclosing that the PWRcell contained a defective rapid shutdown device that overheats, bubbles, combusts, and/or catches fire during normal use, and could cause damage to Plaintiffs' and Class members' solar energy systems and property; and resulting in the malfunction of the solar energy system, causing a decrease or complete shutdown of their solar energy production, and loss in savings in electricity bills. Instead, it affirmatively misrepresented that the PWRcell, among other representations, "safely delivers power directly to your home[,]" provides "backup power during utility power outages[,]" and uses "stored energy from solar panels to power your home, which helps reduce your electric utility costs."

## Estoppel

48. Generac was under a continuous duty to disclose to Plaintiffs and the other Class members the defective nature and safety risks posed by the PWRcell.

49. Generac knowingly, affirmatively, and actively concealed or recklessly disregarded the true safety, reliability, and functionality of the PWRcell, and meanwhile affirmatively misrepresented that the PWRcell was free of all defects, including that the PWRcell would reliably store energy in case of power outages,

18

would provide consistent or reliable solar energy production, and that the PWRcell would result in decreased electricity costs.

50. Based on the foregoing, Generac is estopped from relying on any statutes of limitations in defense of this action.

<u>CLASS ACTION ALLEGATIONS</u>

51. Plaintiffs bring this action on behalf of themselves and on behalf of the following Proposed Class initially defined as follows: All persons and entities in the United States who purchased or leased the PWRcell for installation ("National Class").

52. Plaintiffs also brings this action on behalf of themselves and an Indiana State class defined as follows: All persons and entities in Indiana who purchased or leased the PWRcell for installation ("Indiana State Class").

53. Excluded from the proposed National Class and the Indiana State Class (collectively referred to herein as "Class" unless otherwise noted) are Defendants, their parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendants have a controlling interest, and all Judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54. Plaintiffs reserve the right to re-define any of the Class definitions prior to class certification and after having the opportunity to conduct discovery.

55. This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

## Numerosity of the Proposed Class
### Fed. R. Civ. P. 23(a)(1).

56.    The members of the Class are so numerous that their individual joinder would be impracticable. The Class is comprised of thousands of consumers. The precise number of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendants' records and/or their certified installers and/or contractors. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

## Predominance of Common Questions of Fact and Law
### Fed. R. Civ. P. 23(a)(2); 23(b)(3).

57.    Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members of the Class. The common legal and factual questions include, without limitation:

A.    Whether Defendants knew or should have known that the PWRcell they sold was defective;

B.    Whether Defendants knew or should have known that the PWRcell they sold posed an unreasonable safety risk to consumers;

C.    Whether Defendants knew or should have known that the PWRcell they sold failed to produce consistent or reliable solar energy production;

D.    Whether Defendants failed to disclose material facts relating to the PWRcell, namely, that the SnapRS was defective and unsafe, that it would prevent solar energy systems from producing energy, and that it

20

would not result in decreased electricity costs;

E.   Whether the defective nature of SnapRS devices constitutes a material fact that reasonable consumers would have considered in deciding whether to purchase or lease the PWRcell;

F.   Whether Defendants' representations that the PWRcell was safe, would provide energy during a power outage, and would result in decreased electricity costs were false and misleading;

G.   Whether Defendants violated the Magnuson-Moss Warranty Act as alleged herein;

H.   Whether Defendants breached the express warranties relating to the PWRcell;

I.   Whether Defendants breached implied warranties relating to the PWRcell;

J.   Whether Defendants violated the Indiana Deceptive Consumer Sales Act as alleged herein;

K.   Whether Defendants were unjustly enriched; and

L.   The nature of the relief, including damages and equitable relief, to which Plaintiffs and the members of the Class are entitled.

## Typicality of Claims
### Fed. R. Civ. P. 23(a)(3).

58.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased or leased Defendants' PWRcell which contained the defective and unsafe SnapRS device, suffered damages as a result of that purchase or lease, and seek the same relief as the proposed Class members.

## Adequacy of Representation
### Fed. R. Civ. P. 23(a)(4)

59.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation.

60.    Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

## Superiority of a Class Action
### Fed. R. Civ. P. 23(b)(3).

61.    A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class. There is no special interest in Class members individually controlling the prosecution of separate actions. The damages suffered by individual members of the Class, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. And, even if members of the Class themselves

22

could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief
### Fed. R. Civ. P. 23(b)(1) and (2).

62. In the alternative, this action may properly be maintained as a class action, because:

A. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for each Defendant; or

B. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

23

C. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

**Issue Certification**
**Fed. R. Civ. P. 23(c)(4).**

63. In the alternative, the common questions of fact and law, set forth in Paragraph 57, are appropriate for issue certification on behalf of the proposed Class.

**FIRST CAUSE OF ACTION**
**MAGNUSON-MOSS WARRANTY ACT**
**Written and Implied Warranty**
**15 U.S.C. §§ 2301, *et seq*.**
**(On Behalf of Plaintiffs and the Class).**

64. Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

65. Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendants.

66. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. ("MMWA"), in response to widespread consumer complaints regarding misleading and deceptive warranties. The MMWA imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

67. The Plaintiffs and each member of the Class are "consumers" as defined in 15 U.S.C. §2301(3).

68. Defendants are "supplier[s]" and "warrantor[s]" as defined in 15 U.S.C. §2301(4) and (5).

24

69. The PWRcell, including the SnapRS devices, are "consumer products" as defined in 15 U.S.C. § 2301(1).

70. The MMWA provides a private right of action by purchasers of consumer products against manufacturers or retailers who, among other things, fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1). As alleged herein, Defendants failed to comply with the terms of their express and implied warranties for the PWRcell.

71. Defendants' written and implied warranties made to Plaintiffs and Class members that the PWRcell was free of all defects, including that the PWRcell would reliably store energy in case of power outages, would provide consistent or reliable solar energy production, and that the PWRcell would result in decreased electricity costs, were the same in all material respects.

72. Defendants' written warranties and implied warranties became part of the basis of the bargain between Plaintiffs and Class members when deciding to purchase Defendants' PWRcell.

73. Defendants breached these written and implied warranties, as set forth above, by supplying the PWRcell with defective SnapRS devices that do not meet their warranty obligations; by failing to repair or replace the defective SnapRS devices; and/or refusing to compensate Plaintiffs' and Class members' damages arising from loss or decreased solar energy production from their PWRcell caused by malfunctioning SnapRS devices.

74.     Defendants have reasonable and adequate notice of Plaintiffs' and the Class's claims of breach of express and implied warranty by internal investigations, including their own research, inspection, and testing; warranty claims; complaints submitted to them by their authorized agents (*e.g.*, their dealers, installers, and/or contractors) and/or consumers; communications with governmental entities, including the Consumer Product Safety Commission; and media coverage and inquiries.

75.     Despite having notice and knowledge of the defective SnapRS devices, Defendants failed to provide defect-free PWRcell systems to Plaintiffs and Class members, failed to properly or adequately repair and/or replace the defective PWRcell systems, and failed to provide any form of compensation for the damages resulting from the defective SnapRS devices. Accordingly, affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement for Plaintiffs and Class members to resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. *See* 15 U.S. Code § 2310(a).

76.     Additionally, Plaintiffs on behalf of themselves and the Class, sent a written demand to Defendants before filing this Class Action Complaint.

77. Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their authorized agents (*e.g.*, authorized dealers, certified installers, and/or authorized contractors – the companies that installed Defendants' PWRcell on Plaintiffs' and Class members' residential properties) to establish privity of contract between Defendants on the one hand, and Plaintiffs and each Class member on the other hand.

78. Plaintiffs and Class members have privity of contract with Defendants through their purchase or lease of the PWRcell through Defendants' authorized agents (*e.g.*, their dealers, installers, and/or contractors), and through express written and implied warranties, and brochures that Defendants intended to benefit the consumers, including Plaintiffs and Class members, only.

79. Alternatively, Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their authorized dealers, installers, and/or contractors. Defendants' authorized dealers, installers, and/or contractors were not the intended ultimate consumers of the PWRcell, including the defective SnapRS devices, have no rights under the warranty agreements provided with the PWRcell, which included the SnapRS devices, and thus the warranty agreements were designed for and intended to benefit the consumers only.

80. All jurisdictional prerequisites for this claim have been satisfied. Plaintiffs' and Class members' individual claims meet or exceed $25.00 in value. 15 U.S.C. § 2310(d)(3)(A). The amount in controversy collectively on behalf of the Class meets or exceeds $50,000.00 in value (exclusive of interests and costs) computed on

27

the basis of all claims to be determined in this suit. 15 U.S.C. § 2310(d)(3)(B). The numerosity requirement under 15 U.S.C. § 2310(d)(3)(C) is satisfied through the Class Action Fairness Act of 2005, 28 U.S. Code § 1332(d), as alleged above. *See Castle v. Kroger Co.*, 2022 WL 4776319, at *20 (E.D. Wis. Oct. 3, 2022); *see also Velez v. RM Acquisition, LLC*, 2023 WL 3043239, at *5 (N.D. Ill. Apr. 21, 2023).

81.     The MMWA also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). As a result of Defendants' breaches of their express and implied warranties, Plaintiffs and the Class have been injured and are entitled to equitable/injunctive relief and/or damages in a measure and amount which are to be determined at trial.

82.     In addition, the MMWA provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intends to seek such an award as prevailing consumers at the conclusion of the case.

<u>SECOND CAUSE OF ACTION</u>
**BREACH OF EXPRESS WARRANTY**
**U.C.C. §§ 2-313 and 2A-210**
**(On Behalf of Plaintiffs and the Class).**

83.     Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

84.     Plaintiffs bring this cause of action on behalf of themselves and the Class against Defendants.

85.     Defendants are and were at all relevant times "seller[s]" of the PWRcell under § 2-103(1)(d).

28

86. With respect to leases, Defendants are and were at all relevant times "lessor[s]" of the PWRcell under § 2A-103(1)(p).

87. Plaintiffs and Class members who purchased the PWRcell are "buyer[s]" within the meaning of § 2-103(1)(a), or who leased the PWRcell are "lessee[s]" within the meaning of § 2A-103(1)(n).

88. The PWRcell, including the SnapRS devices, are and were at all relevant times "goods" within the meaning of §§ 2-105(1) and 2A-103(1)(h).

89. In connection with the purchase or lease of the PWRcell, Defendants provided Plaintiffs and Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

90. The PWRcell, including the Snap RS devices, are and were at all relevant times manufactured and distributed by Defendants and are covered by the warranties Defendants provided to all purchasers and lessees of the PWRcell, including Plaintiffs and Class members.

91. Defendants' express warranties were uniform or substantially uniform regarding the PWRcell, including the SnapRS devices, sold to Plaintiffs and Class members.

92. Defendants' express warranties formed the basis of the bargain that was reached when Plaintiffs and Class members unknowingly purchased or leased the PWRcell that came equipped with defective SnapRS devices. At the time Defendants made these express warranties, Defendants knew of the intended purpose of the PWRcell – namely to provide safe, reliable, and consistent solar energy production.

29

93. Defendants breached their express warranties by selling the PWRcell that was defective, unsafe, unreliable, and/or non-functional for providing residential solar electricity. The PWRcell was defective, unsafe, unreliable, and/or non-functional because during normal use, the PWRcell would overheat, burn, melt, char, and/or break apart, resulting in the malfunction of the solar energy system and consumers, including Plaintiffs and Class members, would either see a decrease or complete shutdown of their solar energy production.

94. Defendants breached their express warranties to Plaintiffs and Class members in that the PWRcell was equipped with defective SnapRS devices at the time of purchase or lease. Defendants' PWRcell creates a serious safety risk to Plaintiffs and Class members; does not provide consistent or reliable solar energy production; and does not perform as represented by Defendants.

95. Plaintiffs and Class members submitted their PWRcell for repair, replacement, and/or refund to Defendants and/or their authorized agents. Defendants, however, failed to comply with the express warranties provided to Plaintiffs and Class members by, among other things, failing and/or refusing to repair or replace the defective PWRcell under the warranty described herein.

96. Defendants' acts in failing and/or refusing to repair or replace the defective PWRcell during the warranty period, deprived Plaintiffs and Class members the benefit of their bargain.

97. Furthermore, the express warranty fails in its essential purpose because it is insufficient in making Plaintiffs and Class members whole, and/or because Defendants have failed to adequately provide the promised remedies within a reasonable time.

98. As a direct and proximate result of Defendants' breach of their express warranties and failure to comply with their obligations under the express warranties, Plaintiffs and Class members purchased or leased the PWRcell they otherwise would not have, overpaid for their PWRcell, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. Accordingly, Plaintiffs and Class members have suffered actual and consequential damages, including, but not limited to, the cost of repairing their PWRcell, loss of the use and enjoyment of the PWRcell, and diminution in the value of the PWRcell as described herein.

99. Many of the damages resulting from the defective SnapRS devices cannot be resolved through the remedy of repair or replacement, as those incidental and consequential damages, such as electricity bills incurred as a result of the PWRcell not functioning properly due to the defective SnapRS devices, already have been suffered due to Defendants' conduct as alleged herein.

100. Defendants were provided with notice of the defective SnapRS devices by internal investigations, including their own research, inspection, and testing; warranty claims; complaints submitted to them by their agents (e.g., their dealers, installers, contractors) and/or consumers; communications with governmental

31

entities, including the Consumer Product Safety Commission; and media coverage and inquiries.

101. Despite having notice and knowledge of the defective SnapRS devices, Defendants failed to provide defect-free PWRcell systems to Plaintiffs and Class members, failed to properly or adequately repair and/or replace the defective PWRcell systems, and failed to provide any form of compensation for the damages resulting from the defective SnapRS devices, such as electricity bills incurred as a result of the PWRcell not functioning properly due to the defective SnapRS devices.

102. Additionally, Plaintiffs on behalf of themselves and the Class, sent a written demand to Defendants before filing this Class Action Complaint.

103. Plaintiffs and Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of the Defendants' conduct alleged herein.

104. Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their authorized agents (*e.g.*, authorized dealers, certified installers, and/or authorized contractors – the companies that installed the PWRcell on Plaintiffs' and Class members' residential properties) to establish privity of contract between Defendants on the one hand, and Plaintiffs and each Class member on the other hand.

105. Plaintiffs and Class members have privity of contract with Defendants through their purchase or lease of the PWRcell through Defendants' authorized agents (*e.g.*, their dealers, installers, and/or contractors), and through express written

32

and implied warranties, and brochures that Defendants intended to benefit the consumers, including Plaintiffs and Class members, only.

106.  Alternatively, Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their authorized dealers, installers, and/or contractors. Defendants' authorized agents were not the intended ultimate consumers of the PWRcell, including the defective SnapRS devices, have no rights under the warranty agreements provided with the PWRcell, which included the SnapRS devices, and thus the warranty agreements were designed for and intended to benefit the consumers only.

107.  As a result of Defendants' breach of the express warranties, Plaintiffs and Class members have suffered damages in an amount to be determined at trial. Plaintiffs and Class members seek all remedies allowed by law.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**U.C.C. §§ 2-314 and 2A-212**
**(On Behalf of Plaintiffs and the Class).**

108.  Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

109.  Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class against Defendants.

110.  Defendants are and were at all relevant times "merchant[s]" with respect to the PWRcell, "seller[s]" of the PWRcell under § 2-103(1)(d).

111.  With respect to leases, Defendants are and were at all relevant times "lessor[s]" of the PWRcell under § 2A-103(1)(p).

33

112.     Plaintiffs and Class members who purchased the PWRcell are "buyer[s]" within the meaning of § 2-103(1)(a), or who leased the PWRcell are "lessee[s]" within the meaning of § 2A-103(1)(n).

113.     The PWRcell, including the SnapRS devices, are and were at all relevant times "goods" within the meaning of §§ 2-105(1) and 2A-103(1)(h).

114.     A warranty that the PWRcell was in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to §§ 2-314 and 2A-212.

115.     The PWRcell did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which the PWRcell was used.

116.     The PWRcell would not pass without objection in the solar power industry due to the defective SnapRS devices. Because the PWRcell contained an inherent defect at the time of sale that causes the PRWcell to overheat, bubble, combust, and/or catch fire during normal use, could cause damage to Plaintiffs' and Class members' solar energy systems and property, and failed to provide consistent or reliable solar energy production, the PWRcell was not in merchantable condition and thus not fit for ordinary purposes of providing safe, reliable, or consistent solar energy production.

117.   In the various channels of information through which Defendants sold, leased, and marketed the PWRcell, Defendants failed to disclose material information concerning the SnapRS devices in the PWRcell, which it had a duty to disclose. Defendants had a duty to disclose the defective SnapRS devices because, as alleged herein: (a) Defendants knew or should have known that the PWRcell was defective, posed a risk of injury to Plaintiffs, Class members, and to the public, and failed to provide consistent or reliable solar energy production; (b) Defendants had exclusive knowledge of material facts not known to the general public or Class members, including Plaintiffs; (c) Defendants actively concealed material facts from the general public and Class members, including Plaintiffs, concerning the defective SnapRS devices in the PWRcell; and (d) Defendants made partial representations about the PWRcell that were misleading because they did not disclose the full truth.

118.   Defendants breached the implied warranty of merchantability by manufacturing and selling the PWRcell that is defective. Furthermore, the defective SnapRS devices have caused Class members, including Plaintiffs, to not receive the benefit of their bargain and have resulted in the loss or decrease in solar energy production for months at a time, and loss of monetary energy savings reasonably expected by Plaintiffs, Class members, and consumers when they purchased or leased Defendants' PWRcell.

119.   Plaintiffs and Class members have been damaged as a result of the Defendants' defective SnapRS devices.

120.    As a direct and proximate result of Defendants' breach of the implied warranties and failure to comply with their obligations under their implied warranties, Plaintiffs and Class members purchased or leased the PWRcell they otherwise would not have, overpaid for the PWRcell systems, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. Accordingly, Plaintiffs and Class members have suffered actual and consequential damages, including, but not limited to, the cost of repairing their PWRcell, loss of the use and enjoyment of the PWRcell, diminution in the value of the PWRcell, and loss in savings in electricity bills, as described herein.

121.    Defendants were provided with notice of the defective SnapRS devices by internal investigations, including their own research, inspection, and testing; warranty claims; complaints submitted to them by their authorized agents (*e.g.*, their dealers, installers, contractors) and/or consumers; communications with governmental entities, including the Consumer Product Safety Commission; and media coverage and inquiries.

122.    Despite having notice and knowledge of the defective SnapRS devices, Defendants failed to provide defect-free PWRcell systems to Plaintiffs and Class member, failed to properly or adequately repair and/or replace the defective PWRcell systems, and failed to provide any form of compensation for the damages resulting from the defective SnapRS devices.

123.    Additionally, Plaintiffs on behalf of themselves and the Class, sent a written demand to Defendants before filing this Class Action Complaint.

124. Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their authorized agents (*e.g.*, authorized dealers, certified installers, and/or authorized contractors – the companies that installed Defendants' PWRcell on Plaintiffs' and Class members' residential properties) to establish privity of contract between Defendants on the one hand, and Plaintiffs and each Class member on the other hand.

125. Plaintiffs and Class members have privity of contract with Defendants through their purchase or lease of the PWRcell through Defendants' authorized agents (*e.g.*, their dealers, installers, and/or contractors), and through express written and implied warranties, and brochures that Defendants intended to benefit the consumers, including Plaintiffs and Class members, only.

126. Alternatively, Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their authorized dealers, installers, and/or contractors. Defendants' authorized agents were not the intended ultimate consumers of the PWRcell, including the defective SnapRS devices, have no rights under the warranty agreements provided with the PWRcell, which included the SnapRS devices, and thus the warranty agreements were designed for and intended to benefit the consumers only.

127. As a result of Defendants' breach of the implied warranties, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

37

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### IN Code §§ 26-1-2-313 and 26-1-2.1-210
### (On Behalf of Plaintiffs and Indiana State Class).

128.  Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

129.  Plaintiffs bring this cause of action on behalf of themselves and the Indiana State Class against Defendants.

130.  Defendants are and were at all relevant times "seller[s]" of the PWRcell under § 26-1-2-103(1)(d).

131.  With respect to leases, Defendants are and were at all relevant times "lessor[s]" of the PWRcell under § 26-1-2.1-103(1)(p).

132.  Plaintiffs and Class members who purchased the PWRcell are "buyer[s]" within the meaning of § 26-1-2.1-103(1)(a), or who leased the PWRcell are "lessee[s]" within the meaning of § 26-1-2.1-103(1)(n).

133.  The PWRcell, including the SnapRS devices, are and were at all relevant times "goods" within the meaning of §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

134.  In connection with the purchase or lease of the PWRcell, Defendants provided Plaintiffs and Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

135.  The PWRcell, including the Snap RS devices, are and were at all relevant times manufactured and distributed by Defendants and are covered by the warranties Defendants provided to all purchasers and lessees of the PWRcell, including Plaintiffs and Class members.

136.   Defendants' express warranties were uniform or substantially uniform regarding the PWRcell, including the SnapRS devices, sold to Plaintiffs and Class members.

137.   Defendants' express warranties formed the basis of the bargain that was reached when Plaintiffs and Class members unknowingly purchased or leased the PWRcell that came equipped with the defective SnapRS devices. At the time Defendants made these express warranties, Defendants knew of the intended purpose of the PWRcell – namely to provide safe, reliable, and consistent solar energy production.

138.   Defendants breached their express warranties by selling the PWRcell that was defective, unsafe, unreliable, and/or non-functional for providing residential solar electricity. The PWRcell was defective, unsafe, unreliable, and/or non-functional because during normal use, the PWRcell would overheat, burn, melt, char, and/or break apart, resulting in the malfunction of the solar energy system and consumers, including Plaintiffs and Class members, would either see a decrease or complete shutdown of their solar energy production.

139.   Defendants breached their express warranties to Plaintiffs and Class members in that the PWRcell was equipped with defective SnapRS devices at the time of purchase or lease. Defendants' PWRcell creates a serious safety risk to Plaintiffs and Class members; does not provide consistent or reliable solar energy production; and does not perform as represented by Defendants.

140.    Plaintiffs and Class members submitted their PWRcell for repair, replacement, and/or refund to Defendants and/or their authorized agents. Defendants, however, failed to comply with the express warranties provided to Plaintiffs and Class members by, among other things, failing and/or refusing to repair or replace the defective PWRcell under the warranty described herein.

141.    Defendants' acts in failing and/or refusing to repair or replace the defective PWRcell during the warranty period, deprived Plaintiffs and Class members the benefit of their bargain.

142.    Furthermore, the express warranty fails in its essential purpose because it is insufficient in making Plaintiffs and Class members whole, and/or because Defendants have failed to adequately provide the promised remedies within a reasonable time.

143.    As a direct and proximate result of Defendants' breach of the express warranties and failure to comply with their obligations under their express warranties, Plaintiffs and Class members purchased or leased the PWRcell they otherwise would not have, overpaid for their PWRcell, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. Accordingly, Plaintiffs and Class members have suffered actual and consequential damages, including, but not limited to, the cost of repairing their PWRcell, loss of the use and enjoyment of the PWRcell, diminution in the value of the PWRcell, and loss in savings in electricity bills, as described herein.

144. Many of the damages resulting from the defective SnapRS devices cannot be resolved through the remedy of repair or replacement, as those incidental and consequential damages, such as electricity bills incurred as a result of the PWRcell not functioning properly due to the defective SnapRS devices, already have been suffered due to Defendants' conduct as alleged herein.

145. Defendants were provided with notice of the defective SnapRS devices by internal investigations, including their own research, inspection, and testing; warranty claims; complaints submitted to them by their authorized agents (*e.g.*, their dealers, installers, contractors) and/or consumers; communications with governmental entities, including the Consumer Product Safety Commission; and media coverage and inquiries.

146. Despite having notice and knowledge of the defective SnapRS devices, Defendants failed to provide defect-free PWRcell systems to Plaintiffs and Class members, failed to properly or adequately repair and/or replace the defective PWRcell systems, and failed to provide any form of compensation for the damages resulting from the defective SnapRS devices.

147. Additionally, Plaintiffs on behalf of themselves and the Class, sent a written demand to Defendants before filing this Class Action Complaint.

148. Plaintiffs and Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of the Defendants' conduct alleged herein.

149. Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their authorized agents (*e.g.*, authorized dealers, certified installers, and/or authorized contractors – the companies that installed Defendants' PWRcell on Plaintiffs' and Class members' residential properties) to establish privity of contract between Defendants on the one hand, and Plaintiffs and each Class member on the other hand.

150. Plaintiffs and Class members have privity of contract with Defendants through their purchase or lease of the PWRcell through Defendants' authorized agents (*e.g.*, their dealers, installers, and/or contractors), and through express written and implied warranties, and brochures that Defendants intended to benefit the consumers, including Plaintiffs and Class members, only.

151. Alternatively, Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their authorized dealers, installers, and/or contractors. Defendants' authorized agents were not the intended ultimate consumers of the PWRcell, including the defective SnapRS devices, have no rights under the warranty agreements provided with the PWRcell, which included the SnapRS devices, and thus the warranty agreements were designed for and intended to benefit the consumers only.

152. As a result of Defendants' breach of the express warranties, Plaintiffs and Class members have suffered damages in an amount to be determined at trial. Plaintiffs and Class members seek all remedies allowed by law.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty
### IN Code §§ 26-1-2-314 and 26-1-2.1-212
### (On Behalf of Plaintiffs and Indiana State Class).

153.    Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

154.    Plaintiffs bring this cause of action on behalf of themselves and the Indiana State Class against Defendants.

155.    Defendants are and were at all relevant times "merchant[s]" with respect to the PWRcell, "seller[s]" of the PWRcell under § 26-1-2-103(1)(d).

156.    With respect to leases, Defendants are and were at all relevant times "lessor[s]" of the PWRcell under § 26-1-2.1-103(1)(p).

157.    Plaintiffs and Class members who purchased the PWRcell are "buyer[s]" within the meaning of § 26-1-2.1-103(1)(a), or who leased the PWRcell are "lessee[s]" within the meaning of § 26-1-2.1-103(1)(n).

158.    The PWRcell, including the SnapRS devices, are and were at all relevant times "goods" within the meaning of §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

159.    A warranty that the PWRcell was in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to §§ 26-1-2-314 and 26-1-2.1-212.

160.    The PWRcell did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which the PWRcell was used.

43

161. The PWRcell would not pass without objection in the solar power industry due to the defective SnapRS devices. Because the PWRcell contained an inherent defect at the time of sale that causes the PRWcell to overheat, bubble, combust, and/or catch fire during normal use, could cause damage to Plaintiffs' and Class members' solar energy systems and property, and failed to produce consistent or reliable solar energy production, the PWRcell was not in merchantable condition and thus not fit for ordinary purposes of providing safe, reliable, or consistent solar energy production.

162. In the various channels of information through which Defendants sold, leased, and marketed the PWRcell, Defendants failed to disclose material information concerning the defective SnapRS devices in the PWRcell, which they had to duty to disclose. Defendants had a duty to disclose the defective SnapRS devices because, as alleged herein: (a) Defendants knew or should have known that the PWRcell was defective, and posed a risk of injury to Plaintiffs, Class members, and to the public, and failed to provide consistent or reliable solar energy production; (b) Defendants had exclusive knowledge of material facts not known to the general public or Class members, including Plaintiffs; (c) Defendants actively concealed material facts from the general public and Class members, including Plaintiffs, concerning the defective SnapRS devices in the PWRcell; and (d) Defendants made partial representations about the PWRcell that were misleading because they did not disclose the full truth.

163. Defendants breached the implied warranty of merchantability by manufacturing and selling the PWRcell that are defective. Furthermore, the defective SnapRS devices have caused Class members, including Plaintiffs, to not receive the benefit of their bargain and have resulted in the loss or decrease in solar energy production, and loss of monetary energy savings reasonably expected by Plaintiffs, Class members, and consumers when they purchased or leased Defendants' PWRcell.

164. Plaintiffs and Class members have been damaged as a result of the defective SnapRS devices.

165. As a direct and proximate result of Defendants' breach of the implied warranties and failure to comply with their obligations under their implied warranties, Plaintiffs and Class members purchased or leased the PWRcell they otherwise would not have, overpaid for their PWRcell, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. Accordingly, Plaintiffs and Class members have suffered actual and consequential damages, including, but not limited to, the cost of repairing their PWRcell, loss of the use and enjoyment of the PWRcell, diminution in the value of the PWRcell, and loss in savings in electricity bills, as described herein.

166. Defendants were provided with notice of the defective SnapRS devices by internal investigations, including their own research, inspection, and testing; warranty claims; complaints submitted to them by their authorized agents (*e.g.*, their dealers, installers, contractors) and/or consumers; communications with governmental entities, including the Consumer Product Safety Commission; and

media coverage and inquiries.

167.    Despite having notice and knowledge of the defective SnapRS devices, Defendants failed to provide defect-free PWRcell systems to Plaintiffs and Class member, failed to properly or adequately repair and/or replace the defective PWRcell systems, and failed to provide any form of compensation for the damages resulting from the defective SnapRS devices.

168.    Additionally, Plaintiffs on behalf of themselves and the Class, sent a written demand to Defendants before filing this Class Action Complaint.

169.    Plaintiffs and each Class member have had sufficient direct dealings with either Defendants or their authorized agents (*e.g.*, authorized dealers, certified installers, and/or authorized contractors – the companies that installed Defendants' PWRcell on Plaintiffs' and Class members' residential properties) to establish privity of contract between Defendants on the one hand, and Plaintiffs and each Class member on the other hand.

170.    Plaintiffs and Class members have privity of contract with Defendants through their purchase or lease of the PWRcell through Defendants' authorized agents (*e.g.*, their dealers, installers, and/or contractors), and through express written and implied warranties, and brochures that Defendants intended to benefit the consumers, including Plaintiffs and Class members, only.

171.    Alternatively, Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their authorized dealers, installers, and/or contractors. Defendants' authorized agents were not the intended

ultimate consumers of the PWRcell, including the defective SnapRS devices, have no rights under the warranty agreements provided with the PWRcell, which included the SnapRS devices, and thus the warranty agreements were designed for and intended to benefit the consumers only.

172. As a result of Defendants' breach of the implied warranties, Plaintiffs and Class members have suffered damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Violations of the Indiana Deceptive Consumer Sales Act ("IDCSA")**
**Ind. Code § 24-5-0.5-1, *et seq.***
**(On Behalf of Plaintiffs and Indiana State Class).**

173. Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

174. Plaintiffs bring this cause of action on behalf of themselves and the Indiana State Class against Defendants.

175. Defendants are "person[s]" as defined by Ind. Code § 24-5-0.5-2(a)(2).

176. Defendants are "supplier[s]" as defined by Ind. Code § 24-5-0.5-2(a)(3)(A) and regularly engage in or solicit "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

177. Defendants engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3.

178. Prohibited unfair, abusive, and/or deceptive acts in violation of Indiana Code § 24-5-0.5-3, include, but are not limited to: (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics,

47

accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

179. In the course of their business, Defendants violated the IDCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and functionality of the PWRcell, as alleged herein. In particular, the Defendants sold the PWRcell despite that the defective SnapRS devices in the PWRcell posed and continue to pose risks of significant injury, including actual fire incidents, and/or that failed to provide consistent dependable solar energy production and decreased energy costs.

180. Defendants knowingly concealed and failed to disclose that the PWRcell has defective SnapRS devices and are at increased risk of fire damage, power surges, loss or decreased in solar energy production, and loss of monetary energy saving, and thus requiring immediate repair. Had Defendants disclosed these material facts, Plaintiffs, Indiana Class members, and reasonable consumers would not have purchased or leased the PWRcell or would have paid significantly less for to buy or lease them.

181. By misrepresenting the PWRcell as safe and/or free from defects, and by failing to disclose and actively conceal the dangers and risk posed by the PWRcell and/or the defective SnapRS devices, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ind. Code § 24-5-0.5-

3(b):

A.   Representing that the PWRcell and/or the SnapRS devices installed in them have characteristics, uses, and benefits which they do not have;

B.   Representing that the PWRcell and/or the SnapRS devices installed in them are of a particular standard, quality, and grade when they are not.

182.   Plaintiffs and Indiana Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiffs and the Indiana State Class did not have access to Defendants' internal testing, internal testing equipment(s), internal policies or procedures, or any internal documents regarding the defective SnapRS devices.

183.   Defendants intentionally and knowingly misrepresented material facts regarding the PWRcell with intent to mislead Plaintiffs and the Indiana State Class.

184.   Defendants knew or should have known that their conduct violated the IDCSA.

185.   Defendants owed Plaintiffs and Indiana Class members a duty to disclose all the material facts concerning the PWRcell, including the defective SnapRS devices, because Defendants:

A.   Possessed exclusive knowledge that they were manufacturing, selling, and distributing the PWRcell throughout the United States that did not perform as advertised;

B.   Intentionally concealed the defective nature of the SnapRS devices from Plaintiffs and Indiana Class member; and/or

49

C.     Made incomplete representations about the PWRcell's reliability, safety, and functionality while purposefully withholding material facts that contradicted these representations.

186.   Defendants' concealment of the PWRcell's reliability, safety, and functionality of the PWRcell and/or the defective SnapRS devices were material to Plaintiffs and Indiana Class members.

187.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Indiana Class members, about the true reliability, safety, and functionality of the PWRcell, the quality of the PWRcell, and the true value of the PWRcell.

188.   Defendants' violations present a continuing risk to Plaintiffs and Indiana Class members  as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

189.   Plaintiffs and Indiana Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

190.   As a direct and proximate result of Defendants' violations of the IDCSA, Plaintiffs and Indiana Class members have suffered injury-in-fact and/or actual damage.

191.   Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs and the Indiana State Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the

amount of $500.00 for each Class member, including treble damages up to $1,000.00 for Defendants' willfully deceptive acts.

192. Plaintiffs and the Indiana State Class also seek punitive damages based on the outrageousness and recklessness of the Defendants' conduct and Defendants' high net worth.

193. Defendants received notice pursuant to Ind. Code § 24-5-0.5-5(a) concerning Defendants' wrongful conduct as alleged herein by internal investigations, including their own research, inspection, and testing; warranty claims; complaints submitted to them by their authorized agents (*e.g.*, their dealers, installers, contractors) and/or consumers; communications with governmental entities, including the Consumer Product Safety Commission; and media coverage and inquiries. Therefore, sending pre-suit notice pursuant to Ind. Code § 24-5-0.5-5, is an exercise of futility for Plaintiffs because Defendants have not cured their unfair, abusive, and deceptive acts and practices, or their violations of IDCSA were incurable. Nonetheless, Plaintiffs on behalf of themselves and the Class, sent a written demand to Defendants before filing this Class Action Complaint. Plaintiffs and the Indiana State Class seek all damages and relief to which they are entitled.

<u>SEVENTH CAUSE OF ACTION</u>
FRAUDULENT CONCEALMENT
(On Behalf of Plaintiffs and the Class).

194. Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

51

195. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class against Defendants.

196. Plaintiffs assert claims under the law of fraudulent concealment of the fifty states, the District of Columbia, and Puerto Rico, which is materially the same under the laws of each state, the District of Columbia, and Puerto Rico.

197. Generac had an independent duty to disclose the truth about the defective nature and safety risks posed by the PWRcell because the PWRcell contained a defective rapid shutdown device that overheats, bubbles, combusts, and/or catches fire during normal use, and could cause damage to Plaintiffs' and Class members' solar energy systems and property resulting in the malfunction of the solar energy system, causing a decrease or complete shutdown of their solar energy production, and loss in savings in electricity bills. Plaintiffs and Class members relied on Defendants' material misrepresentations and omissions regarding the safety, reliability, and functionality of the PWRcell.

198. Defendants' failure to disclose was intentional and reflects a reckless disregard for the truth. Defendants knew about the defective nature and safety risks posed by the PWRcell, but intentionally failed to disclose those material facts to Plaintiffs, Class members, and consumers and, as set forth herein, continues to conceal that fact through untrue and misleading statements to the public.

199. Plaintiffs and Class members were induced to act by Defendants' fraudulent concealment of material facts regarding the defective nature and safety risks of the PWRcell. Had Plaintiffs and the Class been told of the defective nature

and safety risks of the PWRcell, they would not have purchased or leased such products or would have paid less for them.

200. Plaintiffs and Class members had a reasonable expectation that the PWRcell equipped with defective SnapRS devices they were purchasing or leasing for their homes were safe, reliable, and functional. Defendants reasonably could have anticipated and intended that Plaintiffs and the Class purchased or leased such products in part based upon such expectations and assumptions, and intended them to do so.

201. Defendants' false representations and omissions were material to consumers because they concerned the safety, reliability, and functionality of the PWRcell, which played a significant role in the value of the PWRcell.

202. Defendants' suppression and omission of material facts associated with the safety risks and lack of reliability and functionality in solar energy production and storage of the PWRcell occurred repeatedly in their trade or business, were capable of deceiving a substantial portion of the purchasing public, including Plaintiffs and Class members, and imposed a serious safety risk on the public, including Plaintiffs and Class members.

203. In failing to disclose the defective nature and safety risks of the PWRcell, Defendants concealed material facts and breached their duty to Plaintiffs and the Class not to do so.

204.  In addition to failing to disclose information it had a duty to disclose, as described above, Defendants actively concealed material information regarding the defective nature and safety risks posed by the PWRcell.

205.  Defendants have still not made full and adequate disclosures and continues to defraud Plaintiffs and Class members by concealing material information regarding the defective nature and  safety risks posed by the PWRcell.

206.  Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and suppressed facts, in that they would not have purchased, leased, or paid as much for the PWRcell, or would have taken other affirmative steps in light of the information concealed from them.

207.  Plaintiffs' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally or reasonably known to the public, Plaintiffs, or Class members.

208.  Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they purchased or leased products that they otherwise would not have purchased, leased, and/or overpaid for the PWRcell as a result of Defendants concealment of the true safety, reliability, and quality of the PWRcell. Had Plaintiffs and Class members been aware of the true nature of the PWRcell, and Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their PWRcell or would not have purchased or leased them at all.

209.   As a direct and proximate result of Defendants' acts of concealment and suppression, Plaintiffs and the Class have suffered and will continue to suffer actual economic damages as detailed above.

210.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights to a safe, reliable, and functional PWRcell and the representations that Defendants made to them, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**EIGHTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class).**

211.   Plaintiffs hereby incorporate all other paragraphs of this Class Action Complaint and re-state them as if fully set forth herein.

212.   Plaintiffs and Class members conferred a benefit upon Defendants. Plaintiffs and Class members paid money for Defendants' PWRcell that were not as represented because it contained a defective rapid shutdown device that overheats, bubbles, combusts, and/or catches fire during normal use, and could cause damage to Plaintiffs' and Class members' solar energy systems and property; that do not provide consistent or reliable solar energy production; and/or do not meet Defendants' guarantees promising safety and reliability. Defendants have unjustly retained the benefits conferred upon them by Plaintiffs and Class members.

55

213. Defendants retained that benefit under circumstances that make it inequitable for them to retain such benefit. Specifically, Defendants retained that benefit even though their PWRcell contained defective SnapRS devices that render the PWRcell unsafe, unreliable, and non-functional. If Plaintiffs and Class members had known the true nature of the PWRcell, they would not have paid money for them or would have paid less.

214. Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for relief and judgment against Defendants as follows:

A.　Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

B.　Awarding Plaintiffs and the Class compensatory damages, in an amount exceeding $5,000,000.00, to be determined by proof;

C.　Awarding Plaintiffs and the Class appropriate relief, including actual and statutory damages;

D.　For punitive damages;

E.　For declaratory and equitable relief, including restitution and disgorgement of profits;

F. For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

G. Awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

H. Awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

I. Awarding pre-judgment and post-judgment interest; and

J. Granting any other relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated this 30th day of June, 2023.

**HAWKS QUINDEL, S.C.**
*Attorneys for Plaintiffs and the Proposed Class*


By: *  /s/ Nicholas E. Fairweather  *
Nicholas E. Fairweather, State Bar No.: 1036681
Email: nfairweather@hq-law.com
Connor J. Clegg, State Bar No.: 1118534
Email: cclegg@hq-law.com
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236

**GIBBS LAW GROUP LLP**
Rosemary M. Rivas*
Rosanne L. Mah*
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
Email: rmr@classlawgroup.com
Email: rlm@classlawgroup.com

\* *Pro hac vice* application to be filed

*Attorneys for Plaintiffs and the Proposed Class*

58